# Exhibit 1

# 597 HIBISCUS LANE REVOCABLE TRUST

THIS 597 HIBISCUS LANE REVOCABLE TRUST U/A/D December 10, 2013 ("Trust") is made by OLYMPIA DE CASTRO and GUSTAVO HERNANDEZ FRIERI as Co-Grantors ("Grantor") and as Co-Trustees (the "Trustee"). This Trust shall be known as the "597 HIBISCUS LANE REVOCABLE TRUST" and may be referred to as such in any instrument of any nature whatsoever.

## ARTICLE 1
## INTENT AND PURPOSES OF TRUST

Every provision of this Trust shall be construed consistently with the Grantor's expressed intentions and purposes. Any provision of this Trust that is inconsistent with the Grantor's intentions and purposes shall be of no effect.

## ARTICLE 2
## IDENTIFICATION AND DEFINITIONS

2.1. "Beneficiary" or "Beneficiaries" shall mean OLYMPIA DE CASTRO and GUSTAVO HERNANDEZ FRIERI. "Contingent Beneficiary" or "Contingent Beneficiaries" shall mean FRANCESCA HERNANDEZ DE CASTRO and GABRIEL HERNANDEZ DE CASTRO. Whenever a Beneficiary or Contingent Beneficiary is under the age of eighteen (18) years, his or her parent or legal guardian shall act for such Beneficiary or Contingent Beneficiary.

2.2. "Income" shall have the same meaning as the term is defined in Fla. Stat. Section 738.03, but for purposes of making any distributions pursuant to this Trust, it shall mean the net income after payment of all Trust administration expenses, Trustee's fees, and taxes, other than the Beneficiary's income taxes.

2.3. "Issue" shall mean natural child or children.



2.4. "Per Stirpes" shall mean that method of distribution pursuant to which a class or group of distributees take by right of representation through a deceased ancestor, a share to which such ancestor would have been entitled had the ancestor not been deceased. If, for example, distribution is to be made "Per Stirpes" to a specified person, and said person is deceased but is survived by children, then the share which would otherwise have been distributable to such deceased specified person had that person been living shall be divided equally among the children of such deceased person. As a further example, and consistent with the example in the preceding sentence, if all of the children of such specified person are deceased, then the share which would otherwise have been distributable to each such deceased child shall be divided equally among the children of each deceased child, with the effect that the children of each such deceased child of each such specified person will receive by right of representation the share which each child's deceased parent would have received had that person then been living.

2.5. "Principal" shall have the same meaning as the term is defined in Fla. Stat. Section 738.03, and shall include the property itemized in the Schedule "A" attached hereto, and any investments, reinvestments and additions to such property.

2.6. "Successor Trustee" shall mean any successor Trustee appointed hereunder.

2.7. "Trustee" shall mean the initial co-trustees of this Trust named herein and any successor trustee from time to time qualified and acting, whether designated pursuant to this Trust or by a court of competent jurisdiction. Unless otherwise provided to the contrary, the Trustee of this Trust shall be the Trustee of any trust created hereunder.

2.8. "Trust Estate" shall mean the property itemized in the Schedule "A" attached hereto or hereafter held by this Trust, and any Income, investments, reinvestments and additions to such property and certificates, interest, dividends, distributions and other securities, cash or other property distributed, issued or otherwise in respect of or exchanged for the foregoing and all replacements, substitutions, additions and proceeds of the foregoing.

## ARTICLE 3
## TRUSTEE

3.1. OLYMPIA DE CASTRO and GUSTAVO HERNANDEZ FRIERI shall be the initial Trustee hereunder.

597 HIBISCUS LANE REVOCABLE TRUST

-2-



3.2. Subject to the other terms hereof, in the event that OLYMPIA DE CASTRO and GUSTAVO HERNANDEZ FRIERI are unable or unwilling to serve as Trustee, then the Beneficiaries then entitled to receive distributions of Income and/or Principal shall appoint a Successor Trustee by a majority vote. If the Beneficiaries lack legal capacity to appoint a Successor Trustee, then the parent or guardian of the Beneficiaries shall appoint a Successor Trustee; otherwise, a Successor Trustee shall be appointed by a court having competent jurisdiction over this Trust.

3.3. Any Successor Trustee shall have an equal share of all the fiduciary powers and responsibilities given to the original Trustee. Any Successor Trustee shall assume office by giving written notice to the Beneficiaries of the Trust and the parent or guardian of such Beneficiaries if they lack legal capacity.

3.4. No Successor Trustee shall be liable for the acts or omissions of any predecessor fiduciary, nor shall a Successor Trustee have a duty to examine the acts or records of any predecessor fiduciary.

3.5. The Grantors exonerate any Trustee that may serve under this Trust from any liability for loss due to mistakes of judgment and directs that the Trustee be held liable only in the event of fraud or gross negligence.

3.6. No person dealing with a Trustee or any Successor Trustee shall be obligated to see to the application of any funds, securities or other property paid or delivered to it, or to inquire into the expediency or propriety of any transaction, or the authority of the Trustee to enter into and consummate a transaction upon the terms it may deem advisable.

3.7. Any Trustee may resign at any time by giving thirty (30) days' written notice to that effect to the Grantors.

3.8. Any departing Trustee shall transfer and deliver to the Successor Trustee the Trust Estate then held by it, whereupon the Trustee shall have full and complete acquittance for all assets so delivered and shall have no further duties with respect thereto hereunder; provided, however, that nothing herein shall prevent any Beneficiary from seeking an accounting by the Trustee or such other resigning trustee or prevent any trustee at any time from filing a judicial settlement and accounting with a court of competent jurisdiction.

3.9. No Successor Trustee shall be liable for any act or omission of any predecessor Trustee. A Successor Trustee may accept the amount tendered and the property received as a full and complete discharge to the predecessor Trustee without incurring any liability for so doing.



3.10. The Trustee shall render an account of its receipts and disbursements at least annually to the Grantors. The Trustee shall be reimbursed for all reasonable expenses incurred in the management and protection of the Trust. Upon request, the Trustee shall make all accounting records with respect to the Trust available for inspection by any Beneficiary or his or her representative during normal business hours.

3.11. A Trustee shall be deemed to have resigned if determined to be "incapable of managing his affairs" in accordance with the standards set forth in Article 8, Section 8.3 of this Trust.

3.12 Wherever discretion is vested in or power is conferred upon more than one (1) Trustee, such discretion or power must be exercised by a majority of the Trustees. If it should happen at any time that there are fewer than three Trustees, such discretion or power must be exercised by unanimity if there are two Trustees and if there is only one Trustee, it may validly exercise such discretion or power alone.

## ARTICLE 4
## REVOCABILITY

This Trust is revocable and the Grantor has the power to alter, amend, revoke, or terminate any Trust provision or interest, whether under this Trust or under any statute or other rule of law.

## ARTICLE 5
## TRUST ADMINISTRATION

5.1. During the Grantor's lifetime, the Trustee may pay to or for the benefit of OLYMPIA DE CASTRO and GUSTAVO HERNANDEZ FRIERI so much of the income of the Trust Estate as the Trustee deems necessary in view of the requirements of an adequate standard of living of OLYMPIA DE CASTRO and GUSTAVO HERNANDEZ FRIERI, taking into consideration the accustomed standard of living of OLYMPIA DE CASTRO and GUSTAVO HERNANDEZ FRIERI and any special needs of OLYMPIA DE CASTRO and GUSTAVO HERNANDEZ FRIERI, such as health care, educational expenses or other similar needs. During the Grantor's lifetime, the Trustee shall make no distributions to or for the benefit of the Contingent Beneficiaries.

5.2. Upon the death of the Grantor, the Trustee shall administer the Trust Estate as follows:

5.2.1 Upon the death of the Grantor, the Trustee shall divide the Trust Estate into so many separate and equal shares so as to provide one (1) Trust Share for the benefit of each of the Contingent Beneficiaries. Each Trust Share is created on a *per stirpes basis* and shall be administered as follows:



Case 1:18-cr-20685-KMW   Document 262-1   Entered on FLSD Docket 11/18/2020   Page 6 of 15

5.2.1.1 Until the Contingent Beneficiary has attained the age of twenty five (25) years, the Trustee shall pay to or for their benefit, from the Income or Principal, such sum or sums as the Trustee shall deem necessary or proper for the Contingent Beneficiary's health, support, education (including preparatory school, college, graduate and postgraduate education), and maintenance, adding any unused Income to the Principal of such Contingent Beneficiary's respective Trust Share at the end of each year. In determining the necessity for and amount of any distributions under this Section 5.2.2.1, the Trustee shall consider the accustomed standard of living of Contingent Beneficiary and any other sources of income received by Contingent Beneficiary.

5.2.1.2 When the Contingent Beneficiary attains the age of twenty five (25) years, the Trustee shall distribute to Contingent Beneficiary one third (1/3) of the Principal, including all the accrued and undistributed Income, of their respective Trust Share, outright, *per stirpes*.

5.2.1.3 When the Contingent Beneficiary attains the age of thirty (30) years, the Trustee shall distribute to Contingent Beneficiary one third (1/3) of the Principal, including all the accrued and undistributed Income, of their respective Trust Share, outright, *per stirpes*.

5.2.1.4 When the Contingent Beneficiary attains the age of thirty five (35) years, the Trustee shall distribute to Contingent Beneficiary the final one third (1/3) of the Principal, including all the accrued and undistributed Income, of their respective Trust Share, outright, *per stirpes*.

5.2.1.5 If any of Contingent Beneficiaries die prior to receiving full and final distribution with surviving Issue, then the Trustee shall divide the deceased Contingent Beneficiary's Trust Share into so many shares so as to provide each deceased Contingent Beneficiary's Issue with one (1) separate and equal share ("Trust Sub-share"). Each Trust Sub-share shall be administered and distributed outright, *per stirpes*, in the terms indicated in points 5.2.2.1, 5.2.2.2, 5.2.2.3 and 5.2.2.4.

5.3. The Primary Beneficiaries and the Contingent Beneficiaries shall not have the power to alienate, encumber or hypothecate any part or all of their interests in any manner, nor shall such Primary Beneficiaries' and Contingent Beneficiaries' interests be subject to the claims of creditors (including claims for alimony) or liable to attachment, execution or other process of law.



## ARTICLE 6
## TERMINATION OF TRUST

This Trust shall terminate at the earliest of the following dates: (a) the date of the distribution of the entire Trust Estate; or, (b) thirty five (35) years after the death of the Grantor. Any property still held in trust at the expiration of that period shall immediately be distributed to the persons then entitled to receive or have the benefit of the Income therefrom in the proportions in which they are entitled thereto, or if their interests are indefinite, then in equal shares.

## ARTICLE 7
## PAYMENT OF TAXES AND EXPENSES

7.1. The Trustee shall make elections under the tax laws as the Trustee deems advisable.

7.2. The Trustee shall have the authority and power to incur and pay the ordinary and necessary expenses of administration, including (but not limited to) reasonable attorneys fees, accountants' fees, and the like.

## ARTICLE 8
## POSTPONEMENT OF POSSESSION AND FACILITY OF PAYMENT

8.1. Except as otherwise provided herein, property which is required to be distributed under the terms of this instrument after the death of Grantor to the Primary Beneficiary and the Primary Beneficiary has not reached the age of twenty five (25) or to a Contingent Beneficiary who has not reached the age of twenty five (25), shall vest immediately in such person, but the Trustee shall retain the property in a separate trust for the benefit of the person until he or she reaches the minimum required age, meanwhile making distributions to or for the benefit of the person of so much or all of the Income and Principal as the Trustee deems necessary or advisable from time to time for the person's support, health, education and best interests, adding to Principal any Income that is not distributed currently.

8.2. If Income or Principal becomes distributable under the terms of this Trust to a person under a legal disability or to a person not adjudicated incompetent, but who, is incapable of managing his affairs, then such Income or Principal shall be distributed or expended in whichever of the following ways the Trustee determines is best:

    (a)    to the person directly;

    (b)    to the legal custodian of the person; or,

    (c)    to a third party directly for the benefit of the person.



8.3. For purposes of this instrument, a person shall be considered "incapable of managing his affairs" when under a legal disability, or if the person's personal licensed physician and one (1) medical doctor who is board certified in the specialty most closely associated with the alleged incapacity (the "Doctors"), notify the Trustee in writing that they each have examined such person, and that illness or physical or mental disability has rendered the person unable to give prompt and intelligent consideration to financial affairs. Such person hereby waives the physician/client privilege or any other privilege, rule, or law which would impede the Trustee from receiving confidential information from the Doctors. Such person further agrees that the Doctors, in the absence of fraud, are not personally liable for any action taken in reliance upon such determination. Furthermore, if it is determined that a person is "incapable of managing his affairs", such person or his custodian or guardian may, at any time, reasonably request a review of such determination by the Doctors. If one Doctor or both Doctors are unwilling or unable to conduct such a review, a Doctor or Doctors, as the case may be, of at least equal experience, knowledge and skill may conduct such review instead. If it is determined by such review that the person is no longer "incapable of managing his affairs", all rights and powers of the person hereunder shall be restored. Any and all Doctors' fees incurred in connection with the foregoing determination shall be paid out of the Trust Estate.

8.4. Receipt by the distributee of any property distributed under this Article shall release the Trustee from any further responsibility for such property.

## ARTICLE 9
## GOVERNING LAW

9.1. The validity, effect, administration and interpretation of this instrument and the Trust created hereby shall be made under the laws of the State of Florida. In this connection, all property subject to this Trust shall be governed only by the substantive law of the State of Florida.

9.2. The property transferred into this Trust by the Grantor shall not be subject to the community property laws or forced share laws of any country's jurisdiction whatsoever.

## ARTICLE 10
## ADMINISTRATION POWERS

In addition to the statutory administrative powers granted by Florida law, the Trustee or Successor Trustee serving hereunder shall have the powers set forth in this Article, which shall be exercisable independently and without court approval or confirmation. The Trustee shall have the authority and power:





10.1. To hold and continue to hold and administer the property received under this instrument, and any additional property which may be received by the Trustee. The Trustee shall not be required to retain any of the original assets comprising the Trust Estate.

10.2. To compromise, settle or adjust any claim or demand by or against any trust created under this instrument and to agree to any rescission or modification of any contract or agreement.

10.3. To hold unproductive or underproductive property as an asset of any trust under this instrument.

10.4. To deduct, retain, expend, and pay out of any money belonging to any trust under this instrument, any and all necessary and proper expenses in connection with the administration of the Trust Estate.

10.5. Unless inconsistent with the other provisions of this instrument, to consider and treat as Principal all dividends payable in stock, all dividends in liquidation, and all "rights" issued on securities and to consider and treat as Income all other dividends received.

10.6. To vote in person or by proxy any stocks or securities held in any trust under this instrument, and to grant such proxies and powers of attorney to such person or persons as the Trustee deems proper, and to engage in voting trusts or agreements with respect to such stocks or securities.

10.7. To determine in accordance with customary accounting procedures, the manner in which the expenses incidental to or in connection with the administration of any trust under this instrument shall be apportioned between Principal and Income.

10.8. To exercise all powers conferred under this instrument after the termination of any trust until the assets of such trust are fully distributed.

10.9. To act under all or any of the powers granted to the Trustee under this instrument in all matters concerning any trust established under this instrument, after the Trustee forms its judgment based upon all circumstances of any particular situation as to the best course to pursue in the interest of the Trust and the Beneficiaries, without the necessity of obtaining consent or permission of any person interested in the Trust.

10.10. To do all other acts reasonably necessary or desirable for the proper and advantageous management, and distribution of Income under any trust established under this instrument.



10.11. To lease any real estate for such term or terms and upon such conditions and rentals in such manner as may be deemed advisable (with or without privilege of purchase), and any lease so made shall be valid and binding for its full term even though it may last beyond the duration of any trust under this instrument, to make repairs, replacements and improvements, structural or otherwise, to any such real estate, to insure against fire or other risk and to charge the expense of such insurance to Principal or Income (or apportion such expense between Principal and Income) as the Trustee may deem proper, to subdivide real estate, to dedicate it to public use and to grant easements as the Trustee may deem proper.

10.12. To sell, exchange, transfer and convey any property, real or personal, held in a trust under this instrument, at public or private sale, for such price or prices and upon such terms as the Trustee determines is for the best interest of the Trust and to execute and deliver any deed or deeds (with or without warranty), receipts, releases, contracts, or other instruments necessary.

10.13. To sell or exchange any "rights" issued on any securities held as an asset of any trust under this instrument.

10.14. To consent to the reorganization, consolidation, merger, liquidation, readjustment of, or other change in any corporation, company, or association, or to the sale, mortgage, or lease of the property thereof or any part thereof, any of the securities or to the property of which at any time or times be held in any trust under this instrument, and to act or exercise any power with reference to such property that may be legally exercisable by any persons owning similar property in their own right, including the exercise of conversion, subscription, purchase or other options, the deposit, surrender, or exchange of securities, the entrance into voting trusts, and the making of agreements or subscriptions which the Trustee may determine necessary or advisable, and to hold and redeem or sell or otherwise dispose of any securities or other property which it may so acquire.

10.15. To act under this instrument through an agent or attorney in fact, by and under a power of attorney duly executed by the Trustee, in carrying out the powers and duties authorized in this instrument.

10.16. To borrow money for any purposes of any trust created under this instrument, or incidental to its administration, upon promissory notes issued by the Trustee in its fiduciary capacity, and to secure the repayment of any such loan by mortgage creating a security interest in, or pledging or otherwise encumbering any part or all of the property of the Trust, and with respect to the purchase of any property, as part of the consideration, to assume a liability of the transferor or to acquire such property subject to a liability.

10.17. To lend money to any person or persons upon such terms and in such ways with such security as the Trustee may deem advisable for the best interests of any trust created under this instrument and its beneficiaries.

597 HIBISCUS LANE REVOCABLE TRUST

-9-



10.18. To make any division, allocation or distribution required under the terms of this instrument in kind or in money, or partly in kind and partly in money, pro-rata or non pro-rata, with respect to any particular property as the Trustee deems proper in its sole discretion, and the Trustee's judgment as to the value of such shares, securities, or other property so allocated shall be conclusive on all parties, regardless of the tax consequences to such parties, and to substitute assets in kind between Income and Principal at fair market value.

10.19. To establish out of Income and Principal, reasonable reserves for depreciation, obsolescence and depletion.

10.20. For convenience of administration, or investment, to hold several trusts as a common fund, dividing the income among them, to assign undivided interest among trusts, to make joint investments of funds belonging to several trusts, to consolidate any separate trust with any other trust with similar provisions for the same beneficiary or beneficiaries.

10.21. Each Trustee under this instrument shall have the continuing power to delegate duties, powers and responsibilities as he or she determines necessary or desirable. Any third person dealing with the Trustee may rely on such Trustee's statement that such delegation is in full force and effect, unless such third person has actual knowledge to the contrary. In the event of disability or death of any individual Trustee, the Successor Trustee shall continue to exercise all duties, powers and responsibilities arising under this instrument.

## ARTICLE 11
## MISCELLANEOUS PROVISIONS

11.1. All references to the plural or singular or to the masculine, feminine or neuter gender shall be deemed interchangeable as the context requires.

11.2. No assets which are exempt from Federal estate tax if not distributable to the Personal Representatives of any Beneficiary shall be used by the Trustee of any trust created under this instrument for the payments of debts, funeral expenses, administration expenses, taxes or other obligations of the estate of the Beneficiary.

11.3. If a person who is entitled to Principal and or Income of a trust created under this instrument upon the death of another person dies simultaneously with such other person, or under circumstances where there is insufficient evidence to establish the order of death, the younger of the two persons shall be deemed to have predeceased the other person.

11.4. Any notice required or permitted under this Trust shall be in writing and shall be deemed sufficiently given or served if sent by registered or certified mail to the last known address of the party to whom such notice is directed.

597 HIBISCUS LANE REVOCABLE TRUST

-10-



11.5. The Grantors anticipate that the Trust Estate may include interests in property as lessee, lessor, licensor, licensee, concessionaire or otherwise, directly or as a partner, limited partner, co-tenant, joint tenant, joint venturer or in some other non-corporate form. Without limiting the generality of any other provision of this instrument, the Grantor authorizes the Trustee to retain, so long as it deems advisable to do so, any such interest, and to acquire, from time to time in its absolute discretion, additional such interests, regardless whether such interests are of a nature generally deemed to represent hazardous or speculative investments or whether such interests produce any income and regardless of any lack of diversification of investments of the Trust Estate. The Trustee shall not be held liable or accountable for any loss which may result from such retention or acquisition.

*[Remainder of Page Intentionally Left Blank]*

**IN WITNESS WHEREOF,** We, OLYMPIA DE CASTRO and GUSTAVO HERNANDEZ FRIERI, as Co-Grantors, and as Co-Trustees, have caused this Trust to be executed and delivered on the date first hereinabove written.

_____
OLYMPIA DE CASTRO, Grantor

_____
GUSTAVO HERNANDEZ FRIERI, Grantor

_____
OLYMPIA DE CASTRO, Trustee

_____
GUSTAVO HERNANDEZ FRIERI, Trustee

**THE FOREGOING INSTRUMENT** was signed, sealed and published by OLYMPIA DE CASTRO and GUSTAVO HERNANDEZ FRIERI, as Co-Grantors and as Co-Trustees, in our presence, all being present at the same time and after which we, at their request and in their presence and in the presence of each other, have signed our names below as witnesses this 10th day of December, 2013.

_____        residing at  14103 SW 138th Place
Witness                                              Miami, Fl. 33172

_____        residing at  2665 S. Bayshore Dr #703
Witness                                              Miami, Fl. 33133

STATE OF FLORIDA           )
                           ) ss:
COUNTY OF MIAMI-DADE       )

597 HIBISCUS LANE REVOCABLE TRUST

-12-

**WE,** OLYMPIA DE CASTRO and GUSTAVO HERNANDEZ FRIERI, _MARISOL GONZALEZ_ and _ALEXIS Rodriguez_, the Co-Grantors and Co-Trustees, and witnesses respectively, whose names are signed to this 597 HIBISCUS LANE REVOCABLE TRUST, having been sworn, declared to the undersigned officer that OLYMPIA DE CASTRO and GUSTAVO HERNANDEZ FRIERI, as Co-Grantors and as Co-Trustees, signed the 597 HIBISCUS LANE REVOCABLE TRUST and that each of the witnesses, in his presence and in the presence of each other, signed the 597 HIBISCUS LANE REVOCABLE TRUST as a witness.

_____
OLYMPIA DE CASTRO, Grantor

_____
GUSTAVO HERNANDEZ FRIERI, Grantor

_____
OLYMPIA DE CASTRO, Trustee

_____
GUSTAVO HERNANDEZ FRIERI, Trustee

_____
Witness

_____
Witness

**SUBSCRIBED AND SWORN** to before me by OLYMPIA DE CASTRO and GUSTAVO HERNANDEZ FRIERI, the Co-Grantors and Co-Trustees, and by _MARISOL GONZALEZ_ and _Alexis Rodriguez_ as witnesses, this 10th day of December, 2013.

_____
NOTARY PUBLIC,
State of Florida at Large

My commission expires:

YILAN RIVERO
Notary Public - State of Florida
My Comm. Expires Aug 13, 2016
Commission # EE 224526

597 HIBISCUS LANE REVOCABLE TRUST

-13-

## SCHEDULE "A"

## PROPERTY

1. Property located at 597 Hibiscus Lane, Miami, Florida 33137.